UNITED STATES *ex rel.* SOUTHERN EXPRESS CO. *v.* MEMPHIS & LITTLE ROCK R. CO. and others.

*(Circuit Court, W. D. Tennessee.   March 3, 1881.)*

1. CONTEMPT OF COURT—BREACH OF INJUNCTION—FOREIGN CORPORA-
TION—FINE.

> Under the statutes of the United States a corporation may be fined for a breach of an injunction, and the court is not limited to proceedings against the individual directors or other responsible agents. And where a foreign corporation is doing business in another state, in which the courts of the United States acquire jurisdiction over it to issue an injunction, it is proper to punish a contempt of the court's authority by a fine, as well against the corporation itself as the subordinate agents found within the jurisdiction.

In Equity.

Rule to show cause why they should not be punished for contempt of court, by the violation of an injunction, was issued against the Memphis & Little Rock Railroad Company, an Arkansas corporation, doing business in Tennessee, and certain designated officials and agents, who, being served with the rule, all appeared and answered, including the corporation.   It appeared that on a bill filed by the Southern Express Company an injunction was granted, among other things, forbidding discriminations against the plaintiff, and directing not more than a certain rate should be charged for express freight between Memphis and Little Rock.   The injunction was properly served, but the railroad company continued to charge a greater rate than it specified, and refused the plaintiff's freight without payment of the overcharges.   There was much proof taken, but the facts on which the court acted were sufficiently stated in delivering judgment.   The defendant company moved at the same time to dissolve the injunction, among other causes, for the reason that the published act of the Arkansas legislature, on which the court acted in determining the rates, was never, in fact, passed, and after the contempt proceedings were ended the injunction was modified in accordance with that fact.   There was shown by the evidence of the telegrams and orders issued by the company,

or some one acting for it, a vacillation between a direction to obey the injunction and one to disobey it outright; but the general result was to charge the rate fixed by the injunction, but to increase it by adding charges for ferriage over the river at Memphis, and bridge tolls over the river at Little Rock, which extra charges had never before been made separately to the plaintiff or other shippers, but were included in the tariff rates.

*F. E. Whitfield, T. B. Turley,* and *Geo. Gillham,* for relators.

*B. C. Brown, R. J. Morgan,* and *W. G. Weatherford,* for respondents.

HAMMOND, D. J., (*orally.*) There is no doubt whatever on the proof that this injunction has been violated, and that deliberately, either because it was supposed this court had no jurisdiction, which had been ruled against the defendant corporation, or because it was supposed that it could be circumvented by offering a pretext for the misconstruction of its plain language. Advice of counsel is no excuse, and, unforfortunately, we have not a hold now on the individuals who instigated the violation, nor any definite proof as to the particular persons responsible for the orders and telegrams under the authority of which the breaches were committed by the subordinate agents of the company. I appreciate the position these agents occupy, and the dilemma in which they were placed. On the one hand they had the unambiguous and plain command of this court, and on the other that of their superiors, to whom, generally, obedience is a duty, and, perhaps, always a necessity, when considered in relation to the probable loss of their employment, for disobedience. Notwithstanding this, there can be no question that at all hazards of such losses it was their duty to obey the injunction. I should be satisfied with a reprimand, and the penalty of costs, if it did not appear in the evidence that these young men, in the language of the telegrams and affidavits, "were not afraid" to "take the responsibility" of violating this injunction, and, but for their disobedience of it, its violation by the others would have been impossible. The route-agent

and messenger are, therefore, fined $50 each, and will stand committed to the jail of Shelby county till the fine and costs are paid. The general manager shows satisfactorily, I am glad to say, that he was in Texas, and neither signed nor authorized the telegrams which directed disobedience of the injunction, and which some parties, unknown to this court, sent in his name, without his knowledge or consent. He advised and counselled obedience when first he had knowledge of the injunction. He is discharged. So the other agents responding to the rule to show cause may be discharged. They only refused to act at the request of the relators in giving orders to the two agents already fined, who were willing to take the responsibility. It is not necessary to determine whether they had superior authority which would have been recognized by the guilty respondents, because they simply did nothing and declined to interfere.

As to the corporation itself, I am satisfied it may be punished under our statutes by a fine, and that the court is not confined to the remedy against the directors individually, or such other responsible persons as may be discovered as the authors of the telegrams and orders. In England it is or was not usual to punish a contempt by a fine, even in the case of natural persons. They were "to stand committed to Whitecross-street prison." The order gave specific directions for purging the contempt where the case required, and the imprisonment continued until they were complied with. It was sometimes required that this imprisonment should last until a money award, in the nature of compensation, was paid to the party injured; but I do not find, in the limited investigation I have been able to make during these proceedings, that a fine was ever imposed in the nature of a penalty to the crown, though it may be so. Obedience to an injunction against privileged persons and corporations was sometimes enforced by sequestration, which placed the property of the contemnor in custody until obedience was given. 2 Dan'l, Ch. Pr. (5th Ed.) 1685, 1687; 2 Bish. Cr. L. (6th Ed.) §§ 241, 273; *Spokes* v. *Banbury Board of Health*, L. R. 1 Eq. 42, and cases cited by these authorities. Our Revised Stat-

utes, taken from the act of March 2, 1831, c. 99, and prior acts of congress, have prescribed the mode of punishment, and directed that it shall be by fine or imprisonment, and this operates as a negation of all other modes of punishment. Contempts may also be punished by information or indictment, in which case the punishment is limited to a fine of not more than $500, or imprisonment not more than three months. Rev. St. §§ 725, 5399; 4 St. 488; *Ex parte Robinson*, 19 Wall. 505; 2 Bish. Cr. L. § 267.

It is constant practice to punish corporations where, they are amenable to the criminal law, by fine. Mr. Bishop says that although "a corporation cannot be hung, there is no reason why it may not be fined for the same act which would subject an individual to the gallows." 1 Bish. Cr. L. (6th Ed.) § 423. It is usual, in contempt proceedings, to arraign the individual agents, and that is the better way, perhaps, where it can be done and is effectual; but, although I have found no case imposing a fine on the corporation itself, and diligent counsel say they find none, I do not hesitate to hold that it can be done, and should be in proper cases. Here the headquarters are in an adjoining state, where the parties—whoever they were—directing a violation of this injunction reside, and I am not satisfied that our authority is vindicated by the fines imposed for their individual offence upon the comparatively innocent young men who are the subordinate agents in the execution of orders for which the corporation itself is fairly responsible. It is here by service of notice in a manner that would be amply sufficient to give this court jurisdiction to render a money decree in a civil suit, and, moreover, have appeared formally and answered the rule. The corporation itself is therefore fined the sum of $250, and the costs of this proceeding.

I have taken into consideration the mitigating circum-. stance that the injunction imposed a restriction as to rates which was not authorized by law; the published act of assembly of the state of Arkansas, upon the authority of which the injunction was granted, having turned out to be not a valid law, it not having been in fact enacted in both houses of the

assembly, as appears in proof. But for that circumstance I should impose a heavier fine. I do not find in the case that good will and fair intention which in cases of wrongful injunctions sometimes reduce the offence so that the court is satisfied with the penalty of costs. The case requires more than this to sustain the dignity of the court against wilful breaches of its authority.

So ordered.